UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **RICK CARDARELLI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | No. 3:06-0313 |
| | ) | JUDGE ECHOLS |
| **CURB RECORDS, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Pending before the Court is Defendant Curb Records Inc.'s Motion for Summary Judgment (Docket Entry No. 30), to which Plaintiff responded in opposition (Docket Entry No. 40), and Defendant filed a reply (Docket Entry No. 45). Also pending are Defendant Curb Records Inc.'s Motion to Strike Statements in the Declarations of Keith Greer and Rick Cardarelli and the Affidavit of Vic Alexander (Docket Entry No. 46), and Defendant Curb Records Inc.'s Motion for Leave to File Reply Brief and Declaration in Further Support of Its Motion to Strike (Docket Entry No. 49), to which Plaintiff filed responses (Docket Entry Nos. 48 & 50). Plaintiff also filed a Request for a Hearing (Docket Entry No. 50) on Defendant's Motion for Leave to File Reply Brief and Declaration in Further Support of Its Motion to Strike.

This is an age discrimination lawsuit filed by Plaintiff Rick Cardarelli, a resident of Stow, Ohio, against his former employer, Curb Records, Inc., ("Curb") under the Age Discrimination In Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*[1] Plaintiff also sued Asylum, a division of Curb, but Curb contends that Asylum is not a business entity capable of being sued. Rather, Asylum is a name and logo licensed to Curb for use primarily to identify certain promotional records and

---

[1] Because Plaintiff has multiple sclerosis, he also initially sued for disability discrimination under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12112, but Plaintiff now agrees with Defendant that summary judgment should be entered in favor of Defendant on that claim. Therefore, the Court will not address the ADA claim and summary judgment will be entered on the claim in favor of Defendants.

materials (the "Curb/Asylum imprint"). This case was originally filed in Ohio federal district court and transferred to this Court under 28 U.S.C. § 1404(a). (Docket Entry No. 14.) The parties previously agreed to voluntary dismissal of Plaintiff Susan Cardarelli's claim for loss of consortium. (Docket Entry Nos. 28 Stipulation of Dismissal & 37 Order.)

## I. FACTS

The Court takes the facts in the light most favorable to Plaintiff. In the early 1990's, Curb moved its operations from California to Nashville, Tennessee, reincorporated as a Tennessee corporation, and began to focus mainly on the country music market. In September 1992, Curb hired Plaintiff as Regional Promotions Director for the Curb Records label. Plaintiff's date of birth is April 29, 1950, and thus, he was forty-two years old when Curb hired him. Plaintiff was an at-will employee. Plaintiff remained in the position until 2000 when he became the national Director of Secondary Stations, also for the Curb Records label. Plaintiff attests that he was not told at the time he became Director of Secondary Stations that the move was related to "poor performance" in his prior assignment or that the change was a demotion, nor was his salary reduced. (Docket Entry No. 42-1, Cardarelli Decl. ¶¶ 5-6.) Rather, he was told that the move was a promotion and he believed that it was a promotion because the job involved greater responsibilities on a national, as opposed to a regional, level and it involved working with a greater number of radio stations. (Id. at ¶ 5.)

In early 2003, Curb acquired the rights to use the name, "Asylum" and began marketing some Curb recording artists under a new record imprint known as "Curb/Asylum Records." As part of establishing this new imprint, Curb formed a new promotions staff that was separate from the promotions staff charged with promoting songs on the "Curb Records" imprint. The Curb/Asylum Promotions Department was divided into five regions: Southeast, Southwest, Midwest, West Coast and Northeast. Plaintiff was designated Regional Promotions Director for the Northeast Region. Around the same time, Curb hired Robert E. Dalton ("Dalton") to serve as Vice President of

2

Promotions for the Curb/Asylum record imprint. Among other responsibilities, Dalton directly supervised Curb/Asylum's five Regional Promotions Directors, including Plaintiff. Curb relied on Plaintiff to develop and maintain professional contacts with radio station personnel and others in his region to promote Curb records and artists. At all times during his employment with Curb, Plaintiff conducted his business activities from offices located in Ohio.

On May 13, 2004, just over one year after the Curb/Asylum imprint's inception, and when Plaintiff was 54 years old, Dalton called Plaintiff on the telephone and terminated his employment for continually poor work performance. Plaintiff contends Dalton provided him no prior warning or indication that his job was in jeopardy, and therefore Plaintiff was surprised and shocked. (Plaintiff's Decl. ¶ 11.) Plaintiff further contends that, during his employment with Curb, no supervisor conducted a formal review of his performance, provided him with a written performance review or told him that his performance was poor. (Id. at ¶ 12.) Soon after the termination, Dalton replaced Plaintiff with thirty-two year old R.J. Meacham. Additional relevant facts are discussed below.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

3

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. ANALYSIS

The parties agree that Plaintiff proceeds under the familiar burden-shifting formula of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Curb concedes that Plaintiff can establish a *prima facie* case of age discrimination: (1) he was at least 40 years of age at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (3) after he was terminated, a substantially younger person was selected for the position. See Coomer v. Bethesda Hosp., Inc., 370 F.3d 499, 510-511 (6th Cir. 2004). Thus, the burden of production shifts to Curb to articulate a non-discriminatory reason for terminating Plaintiff's employment. See id.

Curb claims that it terminated Plaintiff's employment because: (1) airplay tracking data demonstrated that Plaintiff was not successfully promoting Curb/Asylum's records at key radio stations within his region; (2) artists and radio station personnel criticized Plaintiff's promotional efforts; and (3) Plaintiff maintained a minimal level of communication with supervisors and radio station personnel, suggesting inadequate business relationships. Curb relies primarily on Dalton's

4

deposition testimony, "because the only person's assessment of [Plaintiff's] performance that is material is that of Mr. Dalton. If his decision was based on specific facts upon which he reasonably relied, then his termination of [Plaintiff] was proper." (Docket Entry No. 45, Reply Br. at 3.)

Curb points especially to Dalton's testimony and supporting evidence that airplay tracking data purportedly showed that Plaintiff inadequately promoted three songs, "Why Can't We All Just Get A Long Neck," by Hank Williams, Jr., "What The World Needs Now," by Wynonna, and "Good Little Girls," by Blue County. Curb contends that Plaintiff's promotional efforts resulted in song airplay far below what other Curb Regional Promotions Directors were able to attain in their regions and Plaintiff's efforts were also not acceptable when compared to the achievements of promotions directors working for other record labels. Curb emphasizes that a program director at a radio station in Cleveland, Ohio, refused to speak with Plaintiff, and that Plaintiff's low travel expenditures indicated Plaintiff was not traveling within his region to make necessary promotional efforts. Curb also presents Dalton's testimony that he relied on assessments of Plaintiff's performance by other Curb staff members and was himself dissatisfied with Plaintiff's performance on promotional road trips with artists and during Monday morning conference calls in which Dalton discussed with the Regional Promotions Directors weekly radio station playlists of songs, "adds" of Curb/Asylum songs to airplay at particular radio stations, and other promotional efforts.

Because Curb has articulated a non-discriminatory reason for its firing of Plaintiff, the burden of production shifts to Plaintiff to demonstrate by a preponderance of the evidence that Curb's proffered reason was a pretext for age discrimination. See id. Curb moves for summary judgment on the ground that Plaintiff cannot show that Curb's reason for terminating Plaintiff was a pretext for age discrimination.

"To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no

5

basis in fact; (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1084 (6th Cir. 1994). In an effort to establish pretext, Plaintiff relies on his own declaration, (Docket Entry No. 42-1), and the declaration of Keith Greer, another former Regional Promotions Director for Curb whose employment was terminated without warning in December 2003. (Docket Entry No. 42-2.)

Plaintiff attests that, from the inception of the Curb/Asylum imprint until his termination, Curb/Asylum released thirteen (13) songs, all of which were given to the promotions staff to promote. These thirteen songs included the three mentioned by Defendant as inadequately promoted. Plaintiff contends that he actively promoted all 13 songs. (Plaintiff's Decl. ¶¶ 14-16.) Plaintiff denies, however, that all twelve (12) of the radio stations in his region that Curb called "starter stations" were actually "starter stations" for the songs "What The World Needs Now" and "Good Little Girls." A "starter station" for one song may not be a "starter station" for another song. Plaintiff claims he secured six (6) first week "adds" for "What The World Needs Now," and five (5) first week "adds" for "Good Little Girls." He attests these "adds" were not evidence of underperformance because it sometimes takes two to three weeks to get a starter station to "add" a particular song. (Id. at ¶ 21.)

Plaintiff further attests that the Hank Williams, Jr., song, "Why Can't We All Just Get A Longneck" was a difficult song to promote in the Northeast Region as many radio stations did not want to add it to their playlists because it was "too country." Yet, within one month, fifty percent (50%) of Plaintiff's stations had added the song. No promoter for the "Curb/Asylum" imprint secured more than sixty percent (60%) of their stations playing the song. (Id. at ¶ 22.)

Plaintiff further attests that, barring illness or vacation, he attended and actively participated in every weekly teleconference meeting. (Id. at 17.) Plaintiff states that he maintained consistent

communication with Dalton throughout each week regarding the status of his efforts. If he did not reach Dalton personally, he left a message, most of which Dalton did not return. (Id. at 18.) Plaintiff claims that he did travel on a regular basis as needed, and during his tenure he never heard any complaints about his job performance from any of the other Curb/Asylum Regional Promotions Directors, management, or artists. (Id. at ¶¶ 20, 23.) He denies that Dalton or Carson James[2] told him that anyone inside or outside of Curb complained to them about Plaintiff's job performance. (Id. at ¶¶ 24-25.) Finally, Plaintiff attests that, prior to his termination, Dalton fired over the telephone another long-term Curb employee and fellow Regional Promotions Director, Keith Greer, who was age 53 at the time, and replaced him with the substantially younger Adrian Michaels. (Id. at ¶ 26.)

Greer attests that he worked at Curb for twelve years. In 2003 he was Regional Promotions Director for the Southwest Region for the Curb/Asylum imprint. (Greer Decl. ¶¶ 3, 5.) Greer worked with Plaintiff from 1993 through 2003, and during those years Greer did not complain, nor did he hear any other Regional Promotions Directors complain, about Plaintiff's work. Greer also did not hear anyone in the radio or record industry, outside of Curb, complain about Plaintiff or his work. (Id. ¶¶ 4, 10.) Greer attended the same weekly teleconference meetings as Plaintiff, and Plaintiff was consistently prepared for the meetings and was responsive to questions from the supervisor and other promoters. (Id. ¶ 12.)

This evidence, taken as true from the declarations of Plaintiff and Greer, is sufficient to create genuine issues of material fact for trial on whether Curb's proffered non-discriminatory reasons for Plaintiff's employment termination had no basis in fact, did not actually motivate

---

[2] Carson James is Senior Vice President of Promotions for Curb. (Docket Entry No. 34-12, James Depo. at 5.)

Plaintiff's discharge, or were insufficient to motivate discharge. See Manzer, 29 F.3d at 1084. Thus, Curb is not entitled to summary judgment on Plaintiff's age discrimination claim.

Curb moves to strike portions of Plaintiff's Declaration (¶¶ 13, 15, 17, 18, 19, 20, 21, and 22) and portions of Greer's Declaration (¶¶ 5, 7, 9, 10, 11, 12 and 13) on the ground that these witnesses testified in the form of inadmissible opinion. It appears to the Court that Curb would like to have the Court consider only that evidence favorable to Curb. On summary judgment, the Court must take all of the evidence in the light most favorable to Plaintiff. The attestations of Plaintiff and Greer recited above are not simply matters of the witnesses' personal opinion or legal conclusions; rather, they are statements of fact taken from the witnesses' own knowledge and perspective, and the Court must assume these statements are true for purposes of summary judgment. See Matsushita Elec. Indus. Co., 475 U.S. at 587. In making its ruling that disputed issues of material fact exist for trial, the Court has not considered the portions of the declarations to which Curb objects. But even if the Court had considered the challenged testimony, the Court does not conclude that such testimony is inadmissible personal opinion. To the contrary, at trial, such lay witness testimony would be admissible under Federal Rule of Evidence 701.[3] The Court exercises its discretion not to strike any portion of Plaintiff's or Greer's Declarations. See Seay v. Tennessee Valley Auth., 339 F.3d 454, 480 (6th Cir. 2003) (noting review of district court's ruling on motion to strike evidentiary submission is abuse of discretion).

Plaintiff also presents in opposition to summary judgment the Affidavit and attached report of Vic Alexander, Plaintiff's expert. (Docket Entry No. 42-3.) Alexander analyzed airplay data and statistics disclosed by Curb during discovery to determine whether Plaintiff underperformed when

---

[3] Rule 701 provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

8

compared to other Regional Promotions Directors for Curb/Asylum. Based on the data analysis, Alexander concluded that Plaintiff did not underperform his peer group in terms of record play for the number of stations in his territory, and in fact, in many instances, Plaintiff's activity fell within the middle of his peer group. (Docket Entry No. 42-3, Report at 2.)

Curb moves to strike the Alexander Declaration and Report on the grounds that Plaintiff informed the Magistrate Judge during a conference that no expert testimony would impact the dispositive motions, based on that representation the Magistrate Judge extended the deadline for initial expert disclosures to the date dispositive motions were due, and Plaintiff's use of expert testimony to resist the motion for summary judgment sandbagged Curb, which is now unable to reply with the assistance of expert testimony or to cross-examine Plaintiff's expert. The Court declines to strike the Alexander Declaration and Report because it is not entirely clear from the Magistrate Judge's Order what the parties discussed. However, even without the Alexander Declaration and Report, Plaintiff has generated genuine issues of material fact for trial on the issue of pretext. If the Court were to add the Alexander evidence to its analysis, the Court would only conclude that additional genuine issues of material fact are generated for trial.

## IV. CONCLUSION

For all of these reasons, the Court will deny Curb's Motion to Strike Statements in the Declarations of Keith Greer and Rick Cardarelli and the Affidavit of Vic Alexander (Docket Entry No. 46), and Defendant Curb Records Inc.'s Motion for Leave to File Reply Brief and Declaration in Further Support of Its Motion to Strike (Docket Entry No. 49). The Court will also deny Plaintiff's Request for a Hearing (Docket Entry No. 50) on Curb's Motion for Leave to File Reply Brief and Declaration in Further Support of Its Motion to Strike.

Curb's Motion for Summary Judgment (Docket Entry No. 30) will be granted in part and denied in part. The Motion will be granted in that Plaintiff agrees Curb is entitled to summary

9

judgment on the disability discrimination claim brought under the ADA. The Motion will be denied on Plaintiff's age discrimination claim brought under the ADEA because genuine issues of material fact remain for trial. This case will proceed to final pretrial conference and jury trial as previously scheduled.

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

10